VLM Food Trading International v. Illinois Trading VLM Food Trading International v. Illinois Trading Company VLM Food Trading International v. Illinois Trading Company VLM Food Trading International v. Illinois Trading Company VLM Food Trading International v. Illinois Trading Company VLM Food Trading International v. Illinois Trading Company VLM Food Trading International v. Illinois Trading Company Article 7. Requiring good faith in all international transactions. Article 8. Controls intent of the parties, controls overall throughout the treaty. In fact, we always say the whole point of either the UCC or the treaty is to justify or condone the reasonable expectations of the parties. Well, you know, I don't think, unless I missed it, which believe me is possible, that you responded to the defendant's cite to Article 33 of the UN Convention. And that's the provision that states that written terms take precedence over the course of dealing or industry practice. So maybe you can tell me that I'm wrong or you can respond now. No, I mean, you're partially correct, I think, in that, you know, it's not a matter of, the proper analysis is not to pick out one article over another and say that rules over this. The goal is to read them together. Now, there's four articles here, 7, 8, 9, where it says the parties are bound by any practices which they have established between themselves. So that was completely overruled by the court's reliance upon Article 19. There's an obligation to synthesize or read together the articles, but to elevate one over the other, I think, is just an improper analysis. There's no basis for that anywhere in the treaty itself and in any of the, you know, the commentary or law review articles on the treaty. There is no support at all for what the district court did, picking out one and saying that, you know, rules over these other four. Well, some of the articles that you're relying on are interpretive canons, essentially, for lack of a better way to characterize them. And what the operative question here is, when was the contract formed? Because if the trailing invoices introduced a new term into an already formed contract, then you're knocked out. See, but that's just it. The contract was formed when the parties placed these orders and these goods were shipped. Our view is that that term was in there from day one. That, as I see it, is basically a usages of trade argument, that everybody in this trade agrees to attorney's fees all the time without regard to contract language. Well, in fact, in this case, that's exactly what happened. No, no. The contract language came too late. So you're making a usages of trade argument. What's your best evidence that the usages of trade in this business always include attorney's fees? Well, there's seven of them. And this is where we get into, you know, the second problem that I see in the district court opinion is when you think of the skills of justice. Let me just address my question, please. Sure. Don't talk about the district court. There's seven. Give me your best evidence for usages of trade. The best evidence is there was a fact finding in the district court. No, please. I asked you about evidence. The answer to a question about evidence specifies the evidence. Okay. Please. The evidence here was that there was testimony that this is standard in the industry, that all suppliers of produce to the defendant had that term on their invoices. It's not. I didn't ask about suppliers to the defendant. I asked about usages of trade in the industry. Okay. There was testimony at the trial that the fee term is never on the preliminary documents, i.e., the sales confirmation that the district court relied upon. There was testimony that it was never on the purchase order, that the industry standard, testimony as to the industry standard, was that fee term is only on the pay me document, we call it, the document that goes back to the payables people. We may just be talking past one another. I'm not asking for evidence about where the parties put fee terms. Okay. A usages of trade argument is that everybody in the trade understands there are certain things that are true, whether they're expressed in writing or not. It's just the way people behave. Is there any evidence about usages of trade? Yes. In this case, there is. The evidence of that usage of trade is, and that's just the objective standard, but the evidence of that was the unrefuted testimony of the VLM salesperson saying that this term is in every transaction. He's been at three different companies, I believe he testified to, over his 20-some years in the industry, and that this has been on every one of the invoices at every one of the companies he's been at. And the defendant's been in the industry for 30 years. Every one of his other suppliers has it on there. He's honored that provision, as do all of his other suppliers, except VLM. So the seven factors that we found were the fact-finding was standard in the produce industry, that the President had 30 years of experience in the industry, that the fee term was part of all prior transactions between VLM and ITC. Now, all of a sudden they purchased nine different transactions from VLM, they get to the 10th transaction and all of a sudden they don't think that term is going to be part of the deal. If this was a one-time transaction where the invoice followed the arrival of the goods, by all means they win. They win because they couldn't have known about it. But when you're talking about nine transactions prior to this, the bookkeeper and office manager of the defendants testified that, yeah, I saw it there on every transaction from VLM. Could the defendant's bookkeeper find her employer to a contract? In other words, if VLM approached the bookkeeper and asked her to sign a contract that contained a provision for attorney's fees, could she bind her employer? Certainly. She could? Certainly. I think that's an agency relationship. She's clearly in a managerial position within the debtor. In fact, office managers and bookkeepers sign credit applications all the time. So I think absolutely. She's not a run-of-the-mill fork truck driver or an unloader on the dock. I mean, she's the right-hand man of the president of the company, right-hand woman of the president of the company. So he never sees it. It contains a provision for attorney's fees, and she can bind her employer? Absolutely. Okay. Absolutely. So the other one is the defendant number three, the individual, the president of the company. He offered no evidence to refute the fact that the industry practice and custom was that this only shows up on the payme document. It doesn't show up on prior negotiations. All of the other suppliers to ITC had it on there, and that they actually paid that. They didn't just recognize it. They actually paid attorney's fees to its other produce suppliers when they shut down the company. Before you sit down, would you be kind enough to distinguish that Ninth Circuit case, Chateau de Charm Wines v. Sabate, that the defendants cited because it seems to be on all fours with the situation here. I cannot do that today, Your Honor. I can follow up by letter to the panel if you like. It was cited at page 19. I'm sorry. I'm just not familiar with that at this juncture. I'm sorry. Sure. So before I leave the treaty issue anyway, I would ask that when the defendants get up here, you ask them why they believe that all of a sudden, after nine transactions where this term was on there, or at least notice to them was part of this deal, why they think transaction number 10 was going to show up with that term out of it. I mean, the reasonable expectations of the parties are what we're trying to ensure here. The reasonable expectations of the parties, all of the evidence, all seven factors on the treaty, in the scales of justice, so to speak, there's seven grains of sand on our side. There's one grain of sand, the sales confirmation that failed to recite that term. So we think there was an improper balancing of the evidence at the trial court level. Before you sit down on the default issue, which you have not yet addressed, other than to briefly talk about the waiver ruling of the district court, nobody cited the frow rule on logically inconsistent judgments? I'm not familiar with that either. Because it is logically inconsistent here, too. I didn't see that in the briefing at all. No, I understand it, but it is a venerable rule. Okay. And it's a frow? Right. Okay. F-r-o-w-e. And it's basically the proposition that logically inconsistent judgments involving one party in default and other party defendants who prosecute the case successfully are inappropriate. And it seems to me that that rule is at least in play here. How it plays out may be a subject of debate, but the president is only – I mean, he was the one for whom the default was vacated, right? Right, right. All three of them sought vacatur from the district court. The district court denied it as to the two corporate defendants. Right. So they were done and done. The trial proceeded only as to defendant number three.  Well, they were out of court, but the president was allowed to defend. Correct. The entry of default was vacated as to him. Correct. But his liability is tied to the corporate defendant's liability, right, to Illinois Trading's liability. He could contest his own liability. Well, there was no independent basis for liability against him, right? I don't know why he was even in the case. Oh, sure there is. There was a breach of fiduciary duty claim against him. Was that adjudicated? I believe it was in the first judgment, but then when they went back – I didn't see any litigation of that. Did he admit that he breached a fiduciary duty? I don't think he ever admitted it, but the court certainly – What kind of breach of fiduciary duty claim would that be? This is not a shareholders' derivative claim. No, it's a trust action. They basically look at it as the corporate entity is the trustee of the trust, and the corporate entity can't act or fail to act on its own. It has to do so at the direction of an individual. So that is the claim against defendant number three. But as to the default – I see I'm coming up on my time. As to the default issue, there were two main errors by the trial court, we believe. One is that the district court improperly allowed two defaulted parties to start asserting defenses again. When at the beginning of the trial – this goes back to what Your Honor found the first time, which is – I think this was just a matter of the district court getting confused as to what the scope of that trial was. Well, there was an awful lot of confusion. There was. And part of it was because of what you called misleading to the point of subterfuge, the bank's arguments on that. I see my time has expired. Can I finish the discussion? You can finish responding to Judge Fetch's question. So I think there's a lot of confusion going on, and it was the over-reading the scope of the trial, and then when it went back on remand to the district court, the district court unfortunately assumed that all three defendants were kind of back in the mix when that was never raised. The first time they were up for an appeal, they never raised the defaults against them and tried to get those vacated. There is nothing in the record anywhere that would indicate those defaults were ever vacated. So those are set in stone. Thank you, Your Honor. Mr. Brumman. Good morning, Your Honor. How are you today? Mr. Rosner. May it please the Court. I'm accompanied at the council table by Mr. Minster, who assisted in the preparation of the appeal. You can proceed, Mr. Brumman. Very well. We think that both of the issues raised on this appeal are truly non-issues. The judge, Lina Weber, below, recognized that there was a problem with the two corporate defendants in that the appellant here didn't pursue a default judgment, although there had been a default entered in the case. The chronology is correct. The first day I appeared in the case, which was a week before the trial, I requested the judgments and defaults as to all defendants be vacated. It was as to Mr. Oberman, and I believe that was because the judge understood that the two corporate defendants were out of business. They were gone. They no longer existed. Can you help me for a minute? Yes, Judge Rosner. Was this issue of a default by ITC and OLG at issue in the 2013 appeal to this in April of 2014? Who appealed? Was it just Mr. Oberman, or did ITC and OLG also appeal? I believe it was just Mr. Oberman because the judgment was only entered against him. The chronology of this was slightly terrifying for an attorney stepping into the case just before trial, but Mr. Oberman was the only defendant that was up and standing. The other two were gone and out of business. Yes, they were. There was a default entered against them, which I think everybody recognized nothing was going to happen to it because they just weren't here. They didn't have an office that was running. They didn't have a business. They were mired in litigation, other courts. Well, that may be true as a practical matter, but Illinois Trading and the Obie Family Partnership as well as Mr. Oberman were all parties to the prior appeal. That could well have been. That could well have been. It was a set of cross appeals. Correct, correct, correct. So everybody was in court. Everybody was here. I don't feel that it had any particularly great importance, but you're correct. They were all here. And there was never an entry of default judgment against the corporation or the partnership here. No, there was not. There was an entry of default and then there was an entry of final judgment. Correct. Right, against all of them. Yes. And the bank. And the bank. And the bank. I keep ignoring the bank because I didn't have much to do with that part of the litigation, but yes. Right. And that was wiped away when we sent the case back. Right. And there were a lot of opportunities available to the litigants when the case went back. And some are germane to this appeal. You asked me a question on the first appeal that was, Mr. Grumley, do I have enough in front of me to reverse it all right here? And quite frankly, reflecting on that moment, I was kind of scared to say yes because I didn't remember the record perfectly. You sent it back. If the appellate here wanted to augment or enlarge the record or add additional proof or they could have requested that of Judge Leinem Weber below, but they did not. We appeared in front of Judge Leinem Weber. Judge Leinem Weber said I have the appellate court's opinion and went on to produce the next order. But there was no request to augment the practice in dealing or any other theory that has later come up here. And, in fact, the judge disposed rather handily of the default issues regarding the two corporate defendants by saying, and I don't remember the words precisely but pretty closely, and as to the default claims and arguments regarding the corporate defendant, we find there's been a waiver as to those. No judgment was entered here prior to that. What is the basis for Mr. Oberman's liability? Well, if I understand it correctly, the PACA law would require those in the chain of title or directing those to potentially be liable for whatever the charges were and maybe the fees and costs. Mr. Oberman, however, was only the corporate officer. I don't understand in any position that that veil was pierced in the trial below. I mean, I was there. The evidence merely was that he was the president of the corporation that bought the potatoes, I believe it was, and that there was not a payment of this claim and that liability was found on that basis. I believe it was derived directly through the PACA Act, which creates this series of trusts. But it certainly is not the case under SISGI. Well, I ask this because you didn't raise the frail, logically inconsistent judgment rule either. That's correct. And it seems to me, or at least I'm having some difficulty determining whether the liability of all the defendants rests on the same factual premise, in which case holding the president, Oberman, not liable for the attorney's fees, but holding the corporations liable for the attorney's fees, would be logically inconsistent. I mean, nobody addressed this, so I'm kind of . . . I agree with the Court, and I must confess, I didn't know what the frail rule was. In fact, I misspelled it incorrectly the first time on my notes. However . . . Well, the corporation is the debtor, right? The corporation is the debtor. Oberman is the senior officer of the corporation. I think if the Court found, as it did in the prior appeal, that Mr. Oberman is not liable or . . . Well, that's what the district court found. According to this . . . The district court found none of the defendants liable . . . Correct. It was not really distinguishing between the basis of liability for any of them. It was all a contractual issue under the treaty. They were all thrown in the same sock bin. I agree. And it would seem to me, based on this Court's ruling last year, that to the extent there is any claim regarding the two corporate defendants, it should likewise be dismissed as effectively the trial court handled it. This has all been waived. This has been waived. You didn't pursue a default judgment against these two defendants. It's waived. Now, there may be some lack of nicety in doing it that way, but that's not the claim here. If the Court has no further questions, I'll limp to my desk. Thank you. Thank you, Mr. Grumley. Thank you, sir. Mr. Keaton, you attempted to use a little time for rebuttals. We'll give you one minute. Perfect, Your Honor. Hopefully I'll make good use of that. The default claim that they're talking about, the district court didn't just kind of wave a hand and say that was waived because of what happened on the first appeal. The district court took the position that that was waived because it was raised for the first time in this reply brief. That's just factually inaccurate. As your Honor said, like, I've got the record right here, Counsel. That's not true. It was raised prior to trial. At the beginning of the transcript of the trial, it was clarified with the judge, and he said, right, you're correct. And, therefore, the evidence at the trial as to Defendant 3 was limited in scope to that very issue. Secondly, it was raised a second time. I'm sorry, the trial evidence wasn't limited to Oberman's liability. Well, it was limited to Defendant 3. Because everybody had admitted liability on the debt. There was no contest about nonpayment or liability on the debt. It was all about attorney's fees. As to Defendant 3, that's correct. Right, but that's an argument that applies across the board on the same facts as against the corporate defendant who's actually the debtor. Right, but as this court said in Wares, the defaulted parties cannot bootstrap themselves into a liability argument of another defendant. But can we have inconsistent judgments if liability is simply joint and not several and independent? And there's no independent several basis. There is an independent several basis because of the packet trusts. But that hasn't been litigated. Well, that was found in the first judgment. The court found the two corporate defendants liable, and said even a week before trial was when that first came up. The two corporate defendants were defaulted, so there was no evidence as to them. The third defendant was the only one left for that trial, and he took the evidence from that trial and entered judgments as to all three. So the first two judgments were based on default, even though they weren't. There weren't two judgments. There was only one judgment. One judgment as to all three defendants, but different bases for those judgments. I see my time has expired unless there's anything else. Thank you, counsel. The case is taken under review.